IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SCOTT A. BROWN,

                                        Plaintiff,

    v.                                                           OPINION & ORDER

JASEN MILLER,                                              16-cv-682-jdp

                                        Defendant.

---

       Pro se plaintiff Scott Brown, a state prisoner incarcerated at the Columbia Correctional Institution (CCI), is proceeding on an Eighth Amendment claim against defendant Jasen Miller, a correctional officer at CCI. Brown alleges that Miller failed to restrain him despite Brown's warnings that he would harm himself by cutting his arm.

       This opinion and order addresses three motions Brown has before the court. The main issue is his motion for a preliminary injunction. Dkt. 18. The court will also address Brown's request that Miller to "back up" any declarations with documentary evidence, Dkt. 32, and Brown's request for a hearing concerning problems with his mail, Dkt. 39. I will deny all three motions.

## A. Preliminary injunction motion

       Brown moved for a preliminary injunction on March 1, 2017. He asks for an order that requires prison staff to:

          (1)  place Brown on observation status when he cuts himself;

          (2)  place him in a restraint chair while on observation status;

          (3)  place him in a "5 point bed restraints" if he continues to harm himself while on observation status;

> (4) "stop mitigating the severity of [his] injuries to justify their wrong doing of deliberate indifference to [Brown's] acts of self-harm."

Dkt. 18. Brown's motion was not properly supported by admissible evidence, but because he alleged that he was in imminent danger, I ordered Miller to respond to it and I held a telephonic hearing on March 10 to determine whether Brown was in danger. Dkt. 20 and Dkt. 26. After the hearing, Miller submitted supplemental material concerning the "behavior management plan" designed to protect Brown from self-harm. Brown also submitted additional materials. Based on the parties' submissions and the information I received at the hearing, I will deny Brown's motion for preliminary injunction because I conclude that Miller and the medical staff at CCI have taken adequate measures to protect Brown.

A preliminary injunction is "an extraordinary and drastic remedy" that should be granted only when the movant carries the burden of persuasion by a "clear showing." *Boucher v. School Bd. of Greenfield*, 134 F.3d 821, 823 (7th Cir.1998) (citations omitted). When the movant seeks a mandatory injunction, "an injunction requiring an affirmative act by the defendant," the motion must be "cautiously viewed" and granted only "sparingly." *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997).

To obtain a preliminary injunction, the movant must show that (1) he will suffer irreparable harm before the final resolution of his claim without a preliminary injunction; (2) traditional legal remedies are inadequate; and (3) his claim has some likelihood of success on the merits. *BBL, Inc. v. City of Angola*, 809 F.3d 317, 323–24 (7th Cir. 2015). Once the movant makes this showing, the court "weighs the factors against one another, assessing whether the balance of harms favors the moving party or whether the harm to other parties or

the public is sufficiently weighty that the injunction should be denied." *Id*. (citing *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012)).

The Prison Litigation Reform Act limits the scope of preliminary injunctive relief in cases challenging prison conditions. Under the PLRA, the injunctive relief to remedy prison conditions must be "narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2); *see also Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012). The PLRA also requires the court to "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief." 18 U.S.C. § 3626.

Here, Brown fails to show that he will suffer irreparable harm without a preliminary injunction. Brown initially claimed that he faced a "serious risk" to his safety because the prison officials would not take "reasonable steps" to ensure his safety despite his extensive history of self-harm. Dkt. 18, at 2. In response to Brown's motion, Miller submitted declarations from the security director, the supervisor of the Psychological Services Unit, and a manager of the Health Services Unit at CCI. Dkt. 23; Dkt. 24; Dkt. 25; Dkt. 28; Dkt. 29. Brown has submitted his own evidence, including pictures of the scars from his self-harm incidents. *See, e.g.*, Dkt. 19-4.

A prison cannot absolutely ensure the safety of an inmate committed to self-harm. But I am persuaded that CCI has taken reasonable measures to protect Brown. The prison staff at CCI routinely monitors Brown's psychological conditions. *See, e.g.*, Dkt. 24, ¶ 7. When Brown makes a threat of self-harm, the security staff, the Psychological Services Unit, and the Health Services Unit at CCI respond to Brown's threat. Dkt. 23 ¶ 12; Dkt. 24, ¶ 11; Dkt. 25, ¶¶ 6-

8. When appropriate, Brown is placed in physical restraints to prevent him from harming himself. Dkt. 24, ¶¶ 13-14 and Dkt. 27, at 2. The prison officials at CCI have created a "behavior management plan" for Brown, which is an individualized plan on what steps the prison officials take to ensure Brown's safety. Dkt. 24, ¶ 15 and Dkt. 24-1. These measures had been implemented in January 2017, before Brown filed his motion for a preliminary injunction in March 2017.

Brown contends that these measures are inadequate. According to Brown, he has not had an individual session with a psychologist for two weeks, even though he is supposed to have one every week. Dkt. 32; *see also* Dkt. 24, ¶ 8 ("Mr. Brown is seen by a PSU clinician in the Restrictive Housing Unit at least once per week during routine rounds to discuss his mental health concerns."). But having an individual session is only one of several measures to ensure Brown's safety, and there are still others in place: for example, the staff monitors Brown's psychological conditions by speaking to him at his cell door multiple times per week. *See* Dkt. 24, ¶ 8 ("Additionally, [Brown] is often seen multiple times per week at his cell front for informal check-ins or out of cell per his request."). Brown states that he wishes to tell a psychologist about his thoughts away from his cell, Dkt. 32, at 1, but Brown does not explain why ensuring his safety requires pulling him out of his cell for an individual session in a private setting. Brown is entitled to reasonable measures to protect him from self-harm, but he is not entitled to dictate the particular medical and psychological treatment he receives. *See Harper v. Santos*, 847 F.3d 923, 927 (7th Cir. 2017).

Brown asked during the hearing that the prison officials release him from physical restraints when he indicates that he no longer feels suicidal. For example, according to Brown, he was restrained over a weekend even though he no longer felt suicidal and wished to be free

from the restraints. Brown reported that the staff members at the Psychological Services Unit were away for the weekend and that the correctional officers on duty were not allowed to release him from his restraints without approval by PSU staff. He contended that he had been restrained over the weekend as punishment for asking for help. I asked for more information about what happened during that weekend, Dkt. 26, and Miller's counsel submitted a response. Dkt. 27. As it turns out, Brown *was* being cared for during that weekend: Brown remained in restraints because a clinician at the Psychological Services Unit decided during the weekend that keeping Brown restrained was appropriate. Dkt. 27, at 2 and Dkt. 29, ¶ 8. Brown does not dispute this fact. I conclude that Brown's behavior management plan appropriately balances his need for protection against his interest in being free from unwarranted restraint. Accordingly, I will deny Brown's motion for preliminary injunction.

While his motion for preliminary injunction was pending, Brown filed another complaint to open another case and filed another motion for a preliminary injunction on the same set of facts. *Brown v. Dittmann*, Case No. 17-cv-278 (W.D. Wis. Apr. 12, 2017), Dkt. 1 and Dkt. 3. I will screen the new complaint, consolidate that case with this one if appropriate, and address the new motion for a preliminary injunction in a separate order.

**B. Request to require Miller to "back up" declarations with documentary evidence**

Brown also filed a letter in which he contends that one of Miller's declarants had lied to the court. Dkt. 32. I take this letter to be, in part, a response in further support of his motion for preliminary injunction. But the letter requests additional relief, so I will construe it to be a motion. Specifically, Brown requests that I require Miller to submit documents to "back up" declarations with documentary evidence. According to Brown, Dr. Maureen White declaration statement that Brown was "seen by a PSU clinician . . . once per week," Dkt. 24,

5

¶ 8, was a lie. Brown contends that he has not had an individual session with a psychologist for two weeks. I am not persuaded that White's statement was untrue when she made it on March 15, because Brown's statement comes almost two weeks later. In any case, Brown does not submit documentary support of his session history, and his letter is not in a declaration form. So at this point all I have is a minor conflict (if that) between a declaration and the statement in Brown's letter. I will not require that either party to provide documentation for statements made in declarations, although if documentary evidence is available, it might be wise to submit it. Brown's request is denied.

**C. Motion for a hearing on problems with mail**

Brown also moves for a hearing to address the problems he had with his mail. Dkt. 39. He states that CCI's prison mailroom staff has been causing two to three days of delay before sending out Brown's mail by "hiding" his mail. *Id*., at 2. But a few days of delay in delivery of mail is common, inside or outside of prison. The court will not micromanage a prison mailroom to resolve short delays with mail. Brown's motion is denied.

ORDER

IT IS ORDERED that:

1. Plaintiff Scott Brown's motion for preliminary injunction, Dkt. 18, is DENIED.

2. Plaintiff's request for an order requiring defendant Jasen Miller to "back up" declarations with documentary evidence, Dkt. 32, is DENIED.

3. Plaintiff's motion for a hearing on problems with his mail, Dkt. 39, is DENIED.

Entered April 19, 2017.

                        BY THE COURT:

                        /s/

                        _____
                        JAMES D. PETERSON
                        District Judge